UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE L. MCKINNEY, | No. 2:14-cv-02414-EFB |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is remanded for payment of benefits.

I.  BACKGROUND

On August 17, 2004, plaintiff filed applications for a period of disability, DIB, and SSI, alleging that she had been disabled since July 12, 2002. Administrative Record ("AR") at 102-103.[1] Plaintiff's application was denied initially and on reconsideration. *Id.* at 59-64, 69-74. On

---

[1] Technically, plaintiff's application only sought SSI benefits. AR 102-103. However, under the Social Security Administration's policies, the SSI application was also considered to be

1

June 29, 2007, after an hearing, Administrative Law Judge ("ALJ") William C. Thompson, Jr. issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act. *Id*. at 278-289. Plaintiff sought review by the Appeals Council, which vacated the June 29, 2007 decision and remanded the matter back to ALJ Thompson for further development of the record. *Id*. at 303-306.

After further hearing, ALJ Thompson issued another decision, again finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act. *Id.* at 567-577. Plaintiff again sought Appeals Council review, which was granted on August 3, 2012. *Id*. at 586-587. The Appeals Council again vacated ALJ Thompson's decision, finding that he had failed to rule on the issue of disability for the entire period at issue. *Id*. at 586. It therefore remanded the matter for further consideration, but with instructions that on remand the case be assigned to another administrative law judge. *Id*. at 587.

A hearing was held before Administrative Law Judge Daniel G. Heely ("the ALJ"), on March 4, 2013, at which a psychological expert and a vocational expert testified. *Id*. at 1129-1155. On September 18, 2013, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Act.[2] The ALJ made the following

---

an application for DIB benefits. *See id*. at 586.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically

2

specific findings:

1. The claimant met the insured status requirements of the Social Security Act for disability insurance benefits through September 30, 2003.

2. The claimant met the insured status requirements of the Social Security Act for Medicare on the basis of disability through September 30, 2004.

3. The claimant has not engaged in substantial gainful activity since July 12, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

4. The claimant has the following severe impairments: depressive disorder, schizoaffective disorder, substance abuse disorder, borderline intellectual functioning, obesity, degenerative joint disease, blindness in the left eye (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

5. The severity of the claimant's impairments, including the substance use disorders, meets the requirements of sections 12.03 and 12.04 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

\* \* \*

6. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

7. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

\* \* \*

---

determined disabled. If not, proceed to step four.
   Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
   Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3

8. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except: she can perform jobs involving simple, routine, repetitive tasks and occasional public contact; she must avoid all hazards such as moving dangerous machinery and unprotected heights; she can never climb ropes, ladders, and scaffolds; she can occasionally climb ramps or stairs; she is a one-eyed worker, who cannot operate motor vehicles or perform jobs that require depth perception.

\* \* \*

9. If the claimant stopped the substance use, the claimant would be able to perform past relevant work as a dishwasher. This work does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if she stopped the substance use (20 CFR 404.1565 and 416.965).

\* \* \*

10. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use (20 CFR 404.1520(f), 404.1535, 416.920(f) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

*Id.* at 26-48.

Plaintiff's request for Appeals Council review was denied on August 22, 2014, leaving the ALJ's September 18, 2013 decision as the final decision of the Commissioner. *Id.* at 11-14.

II.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

*N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.   ANALYSIS

Plaintiff argues that the ALJ erred in failing to properly (1) analyze whether plaintiff met Listing 12.05(C) requirements, (2) explain why he did not give great weight to Dr. Richwerger's 2012 opinion in its entirety, (3) analyze and provide substantial evidence regarding the issues of prior substance abuse and alleged non-compliance.

A.   <u>The ALJ Failed to Properly Consider Whether Plaintiff Satisfied Listing 12.05(C)</u>

Plaintiff first argues that the ALJ failed to properly analyze whether plaintiff's condition met or equaled the requirements of Listing 12.05(C). ECF No. 19-1 at 14-18. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairment or combination of impairments meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Where a claimant's impairment or impairments meets or equals a listed impairment in Appendix 1, the claimant is per se disabled. 20 C.F.R. § 416.920(d). "Once a per se disability is established, the ALJ has no discretion; he must award benefits." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir.1990).

Listing 12.05–intellectual disability-"refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The listing can be met by demonstrating "[a] . . . full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. Thus, plaintiff meets the listing if (1) she has a valid IQ score between 60 and 70, (2) the evidence demonstrates or supports onset of the

/////

1    impairment before age 22, and (3) she has a physical or other mental impairment imposing an

2    additional and significant work-related limitation of function. *Id*.

3    After filing her application back in 2004, plaintiff underwent multiple mental evaluations

4    that included IQ testing. In October 2004, a psychological evaluation was performed by Dr.

5    James A. Wakefield, Jr., Ph.D. AR 243-247. As part of the evaluation, Dr. Wakefield

6    administered the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III). *Id*. Plaintiff's

7    results included a full scale IQ of 65, verbal IQ of 61, and a performance IQ score of 76. *Id*. at

8    245. Dr. Wakefield's notes indicate that he believed "she gave a good effort on the tests, and the

9    results are considered valid." *Id*.

10   In July 2007, plaintiff was tested by San Joaquin Delta College to determine if she was

11   eligible for the Developmentally Delayed Learning Program. *Id*. at 1111-1113. The WAIS-III

12   was administered, with plaintiff received a full scale IQ of 70, a verbal score of 67, and a

13   performance score of 79. *Id*. at 1112-1113.

14   In October 2009 plaintiff underwent a psychological evaluation, which was performed by

15   psychologist David C. Richwerger, Ed.D. *Id*. at 334-341. Plaintiff was administered the

16   Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV"), which resulted in an full scale

17   of 59. *Id*. at 339. However, Dr. Richwerger indicated that the results of the test did not appear to

18   be valid due to malingering. *Id*. at 338

19   Plaintiff was again evaluated by Dr. Richwerger in November 2012. *Id*. at 758-765.

20   Plaintiff was administered the WAIS-IV, and this time she received a full scale IQ of 70, a verbal

21   comprehension score of 74, and a perceptual reasoning score of 63. *Id*. at 762-763. Dr.

22   Richwerger noted that "the test results appear to be an accurate measure of the claimant's current

23   level of functioning but they may be somewhat of an underestimate of her true cognitive ability

24   due to the presence of . . . psychiatric issues and medication side effects." *Id*. at 762.

25   Aside from the October 2009 scores, which were determined to be invalid by Dr.

26   Richwerger, the remaining IQ scores fall within the 60 to 70 score range required by Listing

27   /////

28   /////

6

12.05(C).  The ALJ's step-three discussion summarized the relevant medical evidence, including evidence related to the IQ scores.[3]  *Id*. at 27-30.  However, notwithstanding those scores he concluded that plaintiff "does not have an intellectual disability as defined in 12.05."  *Id*. at 32.

The Commissioner argues that the ALJ properly determined that plaintiff does not satisfy the listing because "none of the testing satisfied the requirement of a *valid* IQ score of 60-70."  ECF No. 24 at 17.  The Commissioner contends that the 2004 test is invalid because at the time it was performed, plaintiff had recently had a drug relapse and had been sober for only three months.  *Id*.

But the Commissioner provides no explanation as to how this fact renders the test results invalid.  More importantly, neither did the ALJ in his decision.  Furthermore, the record shows that plaintiff informed Dr. Wakefield that she had recently relapsed and had only been clean for three months.  AR 244.  Dr. Wakefield did not suggest that this recent relapse impacted the validity of her IQ test and he relied on the results of the test in finding that plaintiff had deficient intellectual functioning.  *Id*. at 245-246.  And, as noted, the ALJ did not find that the test's proximity to plaintiff's relapse rendered the test results invalid.  *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (a district court is "constrained to review the reasons the ALJ asserts").  Accordingly, the Commissioner's post hoc rationalization may not serve as a basis for finding the 2004 IQ test invalid.

As for the 2007 IQ test performed at San Joaquin Delta College, the Commissioner argues that it is not valid because the test "does not state its validity."  ECF No. 24 at 17.  The Commissioner does not cite to any authority, and the court is not aware of any, requiring IQ test results to affirmatively state that the results are valid or invalid.  Further, review of the form documenting the results provides no basis for questioning the validity of the test results.  The

---

[3] The IQ scores obtained from the San Joaquin Delta College were submitted to the Appeals Council after the ALJ's decision and therefore were not discussed by the ALJ.

court also notes that the results are also fairly consistent with the results from 2004 and 2012, which indicated diminished intellectual functioning.[4] Thus, there is no basis for question the validity of these results.

There is no dispute over the validity of 2009 test results, which Dr. Richwerger found to be invalid. But Dr. Richwerger did not make the same findings with regard to his 2012 testing, which resulted in a full scale IQ score of 70, a verbal comprehension score of 74, and perceptual reasoning score of 63. *Id*. at 762-763. The Commissioner contends, however, that this score does not satisfy Listing 12.05(C) because Dr. Richwerger assessed a full scale IQ of 70 and found that the results may underestimate plaintiff's true cognitive ability due to psychiatric issues and medication side effects. ECF No. 24 at 17. Plaintiff also notes that Dr. Richwerger "diagnosed *only* borderline intellectual functioning, which generally describes an IQ range that is between 71-84." *Id*. Thus, the Commissioner suggests that plaintiff's full scale IQ might be higher than the score of 70 he obtained.

Again, the ALJ did not question the validity of these scores, let alone rely on the reasoning advanced by the Commissioner. Thus, the reasons articulated by the Commissioner cannot form the basis for upholding the ALJ's finding. *See Connett*, 340 F.3d at 874. In any event, the Commissioner's argument is unpersuasive.

While Dr. Richwerger stated that the results "may be somewhat of an underestimate of her true cognitive ability" due to psychiatric issues and medication side effects, the Commissioner conveniently omits Dr. Richwerger's conclusion that the "results appear to be an accurate measure of the claimant's current level of functioning . . . ." AR 762. Also, the Commissioner's reliance of Dr. Richwerger's diagnosis of borderline intellectual function is misplaced, as focus of the 12.05(C) inquiry is the IQ score and not any particular diagnosis. *Mays v. Colvin*, No. 1:13-CV-00904-SKO, 2014 WL 3401385, at *11 (E.D. Cal. July 11, 2014) ("plaintiff is not required to

---

[4] Although the 2007 IQ scores were submitted to the Appeals Council after the ALJ's decision, the court may consider additional evidence submitted to the Appeals Council. *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

8

have a diagnosis of mental retardation[5] to satisfy Listing 12.05(C)"); *Brooks v. Astrue*, No. 3:11-CV-01252-SI, 2012 WL 4739533, at *5 (D. Or. Oct. 3, 2012) ("by the plain language of the regulations, [plaintiff] may meet the listing without a formal diagnosis of mental retardation); *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) (finding that formal diagnosis of mental retardation is not required); *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1057-58 (same); *Applestein-Chakiris v. Astrue*, No. 09CV00009BTM, 2009 WL 2406358, *8 (S.D. Cal. Aug. 5, 2009) (same); *see also Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008) (Listing 12.05(C) "speaks only to the IQ score itself.").

Furthermore, the Commissioner's argument impermissibly focuses on plaintiff's full scale IQ score of 70, without consideration of the lower perceptual reasoning score of 63. In deciding whether plaintiff satisfies Listing 12.05(C), the focus must be on the lowest IQ score. *See Flores v. Astrue*, No. CV 11-10714-MAN, 2013 WL 146190, at *3 (C.D. Cal. Jan. 11, 2013) ("when a claimant has different IQ scores for her verbal, performance, and/or full scale IQ, the lowest score is used to evaluate whether the claimant meets or equals Listing 12.05(C)"); 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c). Even if the court accepted the Commissioner's invitation to assume that plaintiff's cognitive functioning was slightly higher than reflected in the IQ scores, there is no basis for assuming that plaintiff's performance score would surpass 70. Accordingly, the court finds no justification for finding that plaintiff's IQ scores are invalid.

The Commissioner also contends that plaintiff does not meet the listing because she failed to establish that her onset in diminished intellectual function occurred prior to age 22. ECF No. 24 at 18. A claimant is not required to produce an IQ score generated prior to age 22 in order to meet the listing. *See Gomez*, 695 F. Supp. 2d at 1061. Several circuits have held that an adult IQ score creates a rebuttable presumption that the impairment existed before the age of 22. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001) (IQ tests after age 22 satisfy the listing criteria and "create a rebuttable presumption of a fairly constant IQ throughout life") (citing *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001), *Luckey v. U.S. Dept. Of Health and*

---

[5] Listing 12.05c was previously designated "mental retardation" the requirements for listing 12.05c were the same.

1   *Human Services*, 890 F.2d 666, 668 (4th Cir.1989)).  District courts within the Ninth Circuit are
2   split.  *Compare, e.g., Forsythe v. Astrue*, 2012 WL 217751, at * 6–7 (E.D. Cal. Jan. 24, 2012)
3   (collecting cases and adopting presumption); *Jackson v. Astrue*, 2008 WL 5210668, at * 6 (C.D.
4   Cal. Dec. 11, 2008) ("several circuits have held that valid IQ tests create a rebuttable presumption
5   of a fairly constant IQ throughout a claimant's life . . . . The Court finds the reasoning of the
6   Seventh, Eighth, and Eleventh Circuits to be persuasive"); *Schuler v. Astrue*, 2010 WL 1443882,
7   at *6 (C.D. Cal. Apr. 7, 2010) ("a valid qualifying IQ score obtained by the claimant after age 22
8   creates a rebuttable presumption that the claimant's mental retardation began prior to the age of
9   22, as it is presumed that IQ scores remain relatively constant during a person's lifetime"); with
10  *Clark v. Astrue*, 2012 WL 423635 (E.D. Cal. Feb. 8, 2012) (declining to adopt rebuttable
11  presumption); *Rhein v. Astrue*, 2010 WL 4877796, at *8 (E.D. Cal. Nov. 23, 2010) (finding
12  rebuttable presumption would remove plaintiff's burden at step three).

13         This court concurs with the reasoning in *Forsythe* and adheres to the line of cases
14  applying the rebuttable presumption.  *See Wooten v. Colvin*, No. 2:12-cv-426 EFB, 2013 WL
15  5372855, at *3–4 (E.D. Cal. 2013); *Woods v. Astrue*, No. CIV. S-10-2031-GEB-EFB, 2012 WL
16  761720, at *4 (E.D. Cal. 2012).  As the ALJ provided no explanation for why he concluded that
17  plaintiff did not satisfy Listing 12.05(C), he clearly failed to rebut the presumption.

18         Furthermore, evidence in the record indicates that plaintiff had diminished intellectual
19  function prior to age 22.  The record contains plaintiff's education records, which demonstrate
20  that in high school plaintiff received mostly D's and F's prior to dropping out of school in the 11th
21  grade.  AR 260-267.  This evidence is fully consistent with the later IQ test scores and is
22  indicative of the presence of diminished intellectual functioning prior to age 22.  The
23  Commissioner argues, however, that "grades do not necessarily prove an intellectual impairment,
24  and could just as readily reflect Plaintiff's troubled family life or her lack of interest or effort."
25  ECF No. 24 at 18.  But the arguments misses the point that plaintiff's poor academic performance
26  is clearly probative of the existence of the low IQ at the time of the poor performance,
27  particularly in light of later testing that consistently found that a diminished IQ.  While it is
28  ultimately plaintiff's burden to prove that she satisfies a listing at step-three, the court cannot

ignore the fact that the Commissioner fails to cite to any evidence in the record that undermines the validity of plaintiff's IQ scores or indicate adequate intellectual function prior to age 22, test scores that the ALJ ignored or refused to accept.

As for Listing 12.05(C)'s final requirement, there is no dispute that plaintiff has an extra impairment. ECF No. 19-1 at 18; ECF No. 24. The ALJ found that plaintiff has multiple severe impairments, including depressive disorder, schizoaffective disorder, obesity, degenerative joint disease, and blindness in the left eye. AR at 26. "If the claimant has an additional physical or mental impairment "which was itself severe," that impairment "automatically satisfie[s] the more than slight or minimal effect standard."" *Gomez,* 695 F. Supp. 2d at 1062 (citing *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987)). Accordingly, the ALJ erred in determining that plaintiff did not satisfy Listing 12.05(C)

B.  Remand for Payment of Benefits

"A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal quotes and citations omitted). A district court may remand for immediate payment of benefits only where "(1) the ALJ has failed to provide to provide legally sufficient reasons for rejecting evidence; (2) there are no outstanding issues that must be resolved before determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 563 (9th Cir. 2004). However, even where all three requirements are satisfied, the court retains "flexibility" in determining the appropriate remedy. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). "Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits." *Dominguez*, 808 F.3d at 407. Moreover, a court should remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

Here, the circumstances warrant remand for immediate payment of benefits. The evidence before the court establishes that plaintiff satisfies the requirements of Listing 12.05(C). The record contains results from three separate IQ tests producing scores ranging from 60 through 70. AR 245, 762-762, 1111-1113. Not only did the ALJ fail to identify any evidence demonstrating that the onset of plaintiff's diminished intellectual function occurred after the age of 22, the Commissioner's motion similarly fails to identify any evidence that would rebut the presumption. Furthermore, plaintiff's educational records demonstrate significant deficits in academic performance, supporting the presumption and strongly suggesting that plaintiff's impaired function existed prior to turning 22.

The Commissioner contends that the matter should be remanded to permit additional fact-finding or articulation of the step-three finding. ECF No. 24 at 20. But this case was twice remanded before and been before two different ALJs on three different hearings. There simply is no reason to believe that further administrative proceedings would serve any purpose except to further delay plaintiff's receipt of benefits. At set forth above, plaintiff originally filed her application for benefits on August 17, 2004, nearly 12 years ago. *Id*. at 102-103. The decision before this court for review is the third decision by an ALJ, all finding that plaintiff was not disabled. The two prior remands by the Appeals Council included instructions to consider various issues and to further develop the record. There is no reason to believe that remanding for further proceedings will result in more complete development or the production of new, material evidence, or even a more thorough analysis of the existing record. In that regard, there is no justification for the complete failure to address the standards for Listing 12.05(C) after the third hearing. At the March 4, 2014 hearing, plaintiff's counsel argued in her closing remarks that the evidence established that plaintiff was disabled under 12.05(C). AR 1153. In response, the ALJ specifically stated, "I understand your arguments," but still failed to complete the requisite analysis. Given that the fully developed record establishes that plaintiff satisfies Listing 12.05(C), remanding the matter to grant the ALJ another bite at the apple is not appropriate.

Accordingly, the matter is remanded for immediate payment of benefits.

/////

12

## IV.  CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for immediate payment of benefits; and

4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: March 30, 2016.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE